## Ford et al. v. Cunagin.

(Decided Dec. 20, 1935.)

HECTOR JOHNSON for appellants.

J. R. LLEWELLYN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Dan Cunagin sold and delivered to Jake Ford a stock of merchandise at the price of $272. At the time the trade was entered into, Ford stated and represented to Cunagin that he owned 65 acres of land situated in Jackson county purchased of his father, paying him therefor about $250, and owed him the remainder of about $250 or $300. Cunagin and his son were present at the time this occurred. They claim Ford displayed what he claimed was a deed to the land and promised to execute and deliver to Dan Cunagin a mortgage thereon to secure him in the payment of the purchase price of the merchandise. The possession of the merchandise was surrendered to Ford. He executed a note for the purchase price, but refused to carry out his agreement to execute and deliver a mortgage on the 65 acres. Soon thereafter Ford, in the nighttime, loaded them on a truck and hauled them away and disposed of them, leaving Dan Cunagin's debt unpaid and unsecured. Later he brought a suit against Jake Ford to recover on the note. Judgment was rendered in his favor for it, with interest and costs. Ford's deed was not recorded. Cunagin caused an execution to be issued, addressed to the sheriff of the county to be levied on the property of Ford. It was returned to the office from whence it issued, indorsed,

"No property found." Cunagin instituted this action on April 11, 1934, on the execution so returned, against Jake Ford and Dan Ford, to enforce his judgment. He alleged in the petition that Jake Ford was the owner of a tract of land of 35 acres; that Jake had paid Dan Ford "the full purchase price," and either had a deed or a title bond evidencing his title, "the one or the other was true, he did not know which." An attachment was issued and returned executed by levying it on the 35 acres.

On March 7, 1934, Dan Ford, in the presence of Jake, and with his assistance, caused a deed to the 35 acres to be executed and delivered to Vester Callahan, a neighbor of the Fords, conveying to him the land. This deed was recorded the 2d day of June, 1934. On June 20, 1934, Cunagin filed an amended petition charging that the Callahan deed was executed and delivered without consideration and with the intent on the part of Jake Ford, Dan Ford, and Vester Callahan to enable Jake Ford to cover up his ownership of the 35 acres; and Callahan, at the time he accepted the deed, knew that Jake Ford was indebted to him in the amount of his judgment.

Issues were formed by appropriate pleadings, the evidence taken and heard by the court, and, on a submission for trial and judgment, the court decreed a cancellation of Callahan's deed, sustained the attachment, and directed the sale of the 35 acres for the satisfaction of his judgment, interest, and costs.

The question to be decided is one of fact. The evidence satisfactorily establishes that Callahan did not have or pay the $300, the recited consideration for the land. He accounts for his possession of this sum of money by explaining that a number of years previously he had received from the federal government a bonus due him as a veteran of the World War; that he had deposited the sum in bank to his credit, and about a year before he paid the $300 for the land, he withdrew cash of more than $100 and had continuously kept it in his pocket; that a small crop of tobacco was grown on his land by a tenant; he had received a sum therefor and had kept it in his pocket; he had sold a cow, received the cash, and had kept it in his pocket. And, when he decided to buy the land, he borrowed a small sum, and in this manner he had obtained the $300 with

which he paid for the land. At the time he decided to purchase it, Jake Ford was spending a portion of his time at his (Callahan's) home. He assigned as a reason for purchasing the land that he believed it a good investment. The testimony of an officer of the bank from which Callaham claimed he had withdrawn the larger portion of the $300 disputes Callahan's. Dan Ford was inquired of as to the payment to him of the $300 and what disposition he had made of it after he had received it. His explanation was that he had paid debts with it; but he was unable to give the names of the persons to whom he had paid it. Both Callahan and Dan Ford deposed that, after the deed was written, signed, and acknowledged, they left the draftsmen's home, and on their way to their respective home Callahan paid him the $300. At the time it was paid, they claim a brother-in-law of Callahan appeared just in time to observe the passing of the money from Callahan to Ford. Callahan admitted that he had some information that Jake Ford had traded for the 35 acres. The circumstances fairly disclose that at the time of Callahan's asserted purchase of the land and the acceptance of a deed to it he had some knowledge of Jake's indebtedness to Cunagin. Jake Ford positively denied that Dan Ford had ever executed and delivered him a deed or a title bond to either the 65 or the 35 acres. Dan Ford admitted in his testimony that he had at one time executed and delivered to Jake Ford a deed to the 65 acres, but claimed that Jake had surrendered it because the interest on the balance Jake owed him was about equal to the amount which he had paid him when the deed was delivered. He further admitted that he had executed a deed to Jake to the 35 acres which was a part of the 65 acres, but claimed he had never delivered it.

Our review of the evidence, not giving weight to the judgment of the chancellor, convinces us that Dan Ford's deed to him was a mere device of the three to defeat the payment of Cunagin's judgment. See sections 1906 and 1907, Kentucky Statutes, and annotations.

Wherefore the judgment is affirmed.